**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| DEUNTAE THOMAS | CIVIL ACTION NO. 18-0257 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| BARCLAYS CAPITAL INC ET AL | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is a Motion to Dismiss Plaintiff's Complaint (Record Document 10) filed by defendants Barclays Bank Delaware ("Barclays"), Barclays PLC, Barclays Bank PLC, Barclays Capital Inc., Barclays Commercial Mortgage Securities LLC, Barclays Capital Securities LTD, Barclays Dryrock Funding LLC, and Barclays Dryrock Issuance Trust (collectively "Corporate Defendants"). Also before the Court is another Motion to Dismiss Plaintiff's Complaint (Record Document 11) filed by defendants James Staley, David Henderson, James Gibson, Larry Kravetz, Curt Hess, John Thomas McFarlane, Tushar Morzaria, and Matthew Larson (collectively "Individual Defendants"). Both motions seek dismissal of Plaintiff's claims under F.R.C.P. Rules 12(b)(2) and 12(b)(6). For the following reasons, both motions are **GRANTED**.

Also pending before the Court is a Motion to Strike (Record Document 29) filed by Defendants. For the reason stated in Section III of this Memorandum Ruling, the motion is **DENIED** as moot.

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff's factual allegations are as follows:

I opened 4 accounts online with Barclays: 2 CD accounts ending in 6878 and 6880 valued at $1,000,000 each and two Savings Accounts ending in

> 6859 and 6861 valued at $250,000 each on July 11, 2014 using the account at the Federal Reserve Bank of Chicago ending in 5447 with the routing number 0710-0030-1 and received immediate confirmation electronically. On July 14, 2017 I received an email communication stating that the transfers were reversed because the transfers were not accepted by the Federal Reserve bank. In the exhibits that I provide I show that not only did the transfers go through and stick but all payments the Federal Reserve banks process are final and irrevocable. With this knowledge any competent person with this information will reason that since according to the rules for ACH payments that payments take up to two days to settle and once settled the payments are final, irrevocable, and that FedWire will not accept the money it has transferred out. All of this information can easily be found on the Federal Reserve website or by diligent self-search. Going by this information it stands to reason that if any reversals were to occur on day 3 or later of a FedWire transfer then no actual reversal has occurred but fraud and theft by the recipient of the funds from the Federal Reserve. Since this has occurred I have been calling into Barclays trying to speak with a high-level manager to discuss the reasons for the theft [of] the funds from the accounts and closure of these accounts without authorized permission from me. When I do call I get the run around and if/when I speak to a manager I am told that I have committed a scam and that the call will be disconnected immediately. Barclays has put me on their list for scammers and made it to where when I call in I can only speak with the Fraud Department, and now they claim that they have spoken to me on the subject matter and will no longer speak with me. The last time I contacted Barclays I had to call in multiple times, got disconnected multiple times, disrespected by the managers and employees, and told that I was a scammer when I tried to tell the managers that not only do I have evidence that I am in honor but I can show that Barclays took the money, allowed the payment to settle for the maximum time period of two-days, and prove that FedWire states that all of its transactions occur either instantaneously or same day and that these transfers are final, irrevocable, and FedWire will not take these payments back. They have dishonored me by claiming that I'm dealing with a fraudulent transaction.

Record Document 1 at 5.

In addition to his factual allegations, Plaintiff attached a number of documents to his complaint as exhibits. See Record Document 1-2. These documents include: screen shots of various web pages, including the web pages of the Federal Reserve, the National Automated Clearinghouse, Wikipedia, and PYMNTS.com; a UCC filing acknowledgment from the California Secretary of State; and email correspondence between Plaintiff and

Barclays. With these documents, Plaintiff attempts to show that, "not only did the transfers go through and stick but all payments the Federal Reserve banks process are final and irrevocable." Record Document 1 at 5.

Thus, to summarize Plaintiff's factual allegations, Plaintiff opened four bank accounts with Barclays. He then instructed Barclays to request a wire transfer of $2.5 million from an account at the Federal Reserve Bank of Chicago ("Federal Reserve") apportioned to his four Barclays accounts. Barclays proposed this transfer of funds request, and the Federal Reserve subsequently transferred funds totaling $2.5 million to Plaintiff's Barclay's accounts. After two days, these transfers became "final and irrevocable." Record Document 1 at 5. Plaintiff then received email correspondence from Barclays stating that "the transfers were reversed because the transfers were not accepted by the Federal Reserve Bank." Id. However, Plaintiff argues, because the transfer from the Federal Reserve was final and irrevocable at this time, the Federal Reserve would not have accepted any "reversal" of the funds. Therefore, Plaintiff reasons, the money was not actually transferred back to the Federal Reserve but was instead "stolen" by Barclays.

Plaintiff further alleges that on his attempts to reach out to Barclays, he has been accused of attempting to scam Barclays and has been placed on Barclays' "list of scammers." Id. Additionally, he claims that his calls have been ignored and that he has been disrespected by the employees and management at Barclays. Based on these facts, Plaintiff filed the current lawsuit seeking relief in the amount of $17,500,000. Id.

**LAW AND ANALYSIS**

I.  **Legal Standards**

### a. F.R.C.P. 12(b)(2)

Under F.R.C.P 12(b)(2) a defendant may seek to dismiss the plaintiff's claims against him because personal jurisdiction over that defendant is absent. There is personal jurisdiction if the state's long-arm statute extends to the defendant and the exercise of such jurisdiction is consistent with due process. See Johnston v. Multidata Sys. Int'l Corp., 523 F.3d 602, 609 (5th Cir. 2008). The Louisiana long arm statute extends as far as is permitted by due process. See Patin v. Thoroughbred Power Boats Inc., 294 F.3d 640 (5th Cir. 2002). The exercise of personal jurisdiction over a defendant comports with due process only if (1) the defendant has purposefully availed himself of the benefits and protection of Louisiana by establishing "minimum contacts" with Louisiana and (2) the exercise of personal jurisdiction over the defendant does not offend traditional notions of fair play and substantial justice. Allred v. Moore & Peterson, 117 F.3d 278, 285 (5th Cir. 1997).

Personal jurisdiction may be general or specific. General jurisdiction "requires 'continuous and systematic' forum contacts and allows for jurisdiction over all claims against the defendant, no matter their connection to the forum." In re DePuy Orthopaedics, Incorporated, Pinnacle Hip Implant Product Liability Litigation, 888 F.3d 753, 778 (5th Cir. 2018) (internal citations omitted). Specific jurisdiction "obtains only where a defendant 'purposefully directs' his activities toward the state, and the plaintiff's claim 'arises out of or is related to' the defendant's forum contacts." Id. (internal citations omitted).

The plaintiff bears the burden of establishing jurisdiction. See Patterson v. Aker Sols. Inc., 826 F.3d 231, 233 (5th Cir. 2016). If, as here, the court rules on personal

jurisdiction without conducting an evidentiary hearing, the plaintiff bears the burden of establishing only a *prima facie* case of personal jurisdiction. See Quick Techs., Inc. v. Sage Grp. PLC, 313 F.3d 338, 343 (5th Cir. 2002). In determining whether plaintiff has met its burden, the Court "must accept the plaintiff's uncontroverted allegations, and resolve in [his] favor all conflicts between the facts contained in the parties' affidavits and other documentation." Patterson, F.3d at 233.

   **b. Rule 12(b)(6)**

Rule 8(a)(2) of the Federal Rules of Civil Procedure governs the requirements for pleadings that state a claim for relief, requiring that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The standard for the adequacy of complaints under Rule 8(a)(2) is now a "plausibility" standard found in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and its progeny. Under this standard, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662 (2009). A claim for relief is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A claim for relief is implausible on its face when the "well pleaded facts do not permit the court to infer more than the mere possibility of misconduct." Id.

Rule 9(b) governs the requirements for pleadings that allege fraud. According to this rule, "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). A plaintiff bringing a fraud claim must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." ABC Arbitrage v. Tchuruk, 291 F.3d

336, 350 (5th Cir. 2002); see also United States ex rel. Steury v. Cardinal Health, Inc., 625 F.3d 262, 266 (5th Cir. 2010) (plaintiffs alleging fraud must allege the "who, what, when, where, and how" of the alleged fraud). The standard for pleading fraud is, therefore, a higher standard than the standard for pleading other claims that must only comply with the Rule 8(a)(2) standard.

Federal Rule of Civil Procedure 12(b)(6) allows parties to seek dismissal of a party's pleading for failure to state a claim upon which relief may be granted. In deciding a Rule 12(b)(6) motion to dismiss, a court generally "may not go outside the pleadings." Colle v. Brazos Cty., Tex., 981 F.2d 237, 243 (5th Cir. 1993). However, a court may also rely upon "documents incorporated into the complaint by reference and matters of which a court may take judicial notice" in deciding a motion to dismiss. Dorsey v. Portfolio Equities, Inc., 540 F.3d 333, 338 (5th Cir. 2008). A judicially noticed fact "must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b).

When analyzing a complaint for purposes of 12(b)(6), the Court must accept all allegations in a complaint as true. See Iqbal, 556 U.S. at 678. However, courts do not have to accept legal conclusions as facts. See id. Courts considering a motion to dismiss under Rule 12(b)(6) are only obligated to allow those complaints that are facially plausible under the Iqbal and Twombly standard to survive such a motion. See id. at 678-679. If the complaint does not meet this standard, it can be dismissed for failure to state a claim upon which relief can be granted. See id. The same is true for fraud claims that fail to meet the requirements of Rule 9(b). See United States ex rel. Gage v. Davis S.R. Aviation,

L.L.C., 623 Fed. Appx. 622, 625-26 (5th Cir. 2015) (unpublished). Such a dismissal ends the case "at the point of minimum expenditure of time and money by the parties and the court." Twombly, 550 U.S. at 558.

"We hold *pro se* plaintiffs to a more lenient standard than lawyers when analyzing complaints, but *pro se* plaintiffs must still plead factual allegations that raise the right to relief above the speculative level." Chhim v. Univ. of Texas at Austin, 836 F.3d 467, 469 (5th Cir. 2016). While dismissals of *pro se* pleaders under 12(b)(6) are ordinarily accompanied by leave to amend, it is not necessary to grant such leave where it is "obvious from the record that the plaintiff has pled his best case." Hale v. King, 642 F.3d 492, 503 (5th Cir. 2011).

## II. Analysis

### a. Personal Jurisdiction

#### i. Barclays Bank Delaware

The Motion to Dismiss filed on behalf of the Corporate Defendants (Record Document 10) argues that "Plaintiff has not alleged a basis for personal jurisdiction over any [Corporate] Defendant, except for [Barclays]." Record Document 10-1 at 20. The Court takes this to mean that Barclays is not asserting a 12(b)(2) challenge. Therefore, personal jurisdiction as to Barclays will not be addressed. The remaining Corporate Defendants and all Individual Defendants seek dismissal for lack of personal jurisdiction under Rule 12(b)(2).

#### ii. All Other Defendants

As to the remaining Corporate Defendants, the Court finds that Plaintiff has failed to meet his burden in establishing personal jurisdiction. As stated above, the burden is on

Plaintiff to establish jurisdiction. See Patterson v. Aker Sols. Inc., 826 F.3d 231, 233 (5th Cir. 2016). To meet his burden, Plaintiff must allege that the defendants have had sufficient "minimum contacts" with the state of Louisiana to support personal jurisdiction, either specific or general. Plaintiff has not alleged that any of the remaining Corporate Defendants are domiciled in Louisiana. Additionally, Plaintiff has failed to allege any contacts by the remaining Corporate Defendants with the forum state of Louisiana. In fact, Plaintiff fails to allege any facts in his complaint connecting any of the remaining Corporate Defendants to the events at issue in this case. Therefore, Plaintiff has failed to meet his burden to make a *prima facie* showing of personal jurisdiction regarding these defendants. See Quick Techs., Inc. F.3d at 343. Therefore, all claims against the remaining Corporate Defendants should be **DISMISSED** for lack of personal jurisdiction.

The same is true regarding all Individual Defendants. Plaintiff does not allege that any Individual Defendant is domiciled or resides in Louisiana. Additionally, Plaintiff has failed to allege that any Individual Defendant had any connection to the events surrounding this case or has had any contacts with the State of Louisiana. Therefore, Plaintiff has failed to meet his burden to make a *prima facie* showing of personal jurisdiction for the Individual Defendants. For these reasons, all claims against the Individual Defendants should be **DISMISSED** for lack of personal jurisdiction.[1]

---

[1] It is worth noting here that even if this Court had personal jurisdiction over the Corporate Defendants, it would not automatically have personal jurisdiction over any Individual Defendant by virtue of his or her association with a Corporate Defendant. See Stuart v. Spademan, 772 F.2d 1185 (5th Cir. 1985) ("While the general rule is that jurisdiction over an individual cannot be predicated upon jurisdiction over a corporation, courts have recognized an exception to this rule when the corporation is the alter ego of the individual."). Plaintiff has alleged no facts suggesting that any of the Corporate Defendants are "alter egos" of any of the Individual Defendants.

### b. Failure to State a Claim

It is only necessary to address Barclays' 12(b)(6) challenge, as all other defendants have been dismissed under 12(b)(2). However, the Court notes that the following analysis under Rule 12(b)(6) would apply with equal force to all other defendants if they were subject to the Court's personal jurisdiction.

Plaintiff fails to identify any particular provision of law providing a cause of action. However, he does make vague references to "theft," "fraud," and "defamation." See Record Document 1. Additionally, in Section II(A) of Plaintiff's complaint, he lists the following provisions of law as bases for federal question jurisdiction: the entire Uniform Commercial Code, The National Bank Act, The Federal Tax Lien Act, 42 U.S.C. Chapter 7, U.S. Code Title 18, U.S. Code Title 28, and the Dodd Frank Act. Id. at 3. Plaintiff does not cite to specific sections of these statutes and does not mention any of these provisions of law in the body of his complaint. However, because we hold *pro se* plaintiffs to a "more lenient standard than lawyers when analyzing complaints," the Court will address the causes of action that may be related to these vague references. See Chhim, 836 F.3d at 469.

#### i. Theft or Conversion

As stated in the factual background section above, Plaintiff alleges that Barclays did not "reverse" the transfer of the $2.5 million, but committed "theft" of the funds. See Record Document 1 at 5. Taking all of Plaintiff's factual allegations as true, Plaintiff fails to state a claim for the alleged "theft" of $2.5 million.

For any cause of action related to the theft of property, Plaintiff would be required to show that he has a right to the property. For example, under Louisiana law, the relevant

claim would be one of conversion. In order to prevail on a claim of conversion under Louisiana law, "the plaintiff must prove that: (1) he owned or had the right to possess funds that were misused by the defendant; (2) the misuse was inconsistent with the plaintiff's rights of ownership; and, (3) the misuse constituted a wrongful taking of the funds." Watson v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 2015 WL 5714635, at *8 (E.D. La. 2015) (quoting Chrysler Credit Corp. v. Perry Chrysler Plymouth, 783 F.2d 480, 484 (5th Cir. 1986).

Here, Plaintiff fails to allege that he has any right to the funds in the Federal Reserve account at issue. Additionally, and most importantly, the Court takes judicial notice of the fact that "individuals cannot, by law, have accounts at the Federal Reserve," as the Federal Reserve "provides financial services to banks and governmental entities only." *Does the Federal Reserve maintain accounts for Individuals? Can individuals use such accounts to pay bills and get money?*, (Dec. 27, 2018, 1:20 PM), https://www.federalreserve.gov/faqs/does-the-federal-reserve-maintain-accounts-for-individuals-can-individuals-use-such-accounts-to-pay-bills-and-get-money.htm; See also 12 C.F.R. Subchapter A.[2] Thus, not only does Plaintiff fail to allege that he had a right to the funds in the Federal Reserve Account, he is legally precluded from having any such right or account. Even if Plaintiff had alleged such a right, his claim would be implausible at best. Therefore, any claim for conversion or theft should be **DISMISSED** for failure to state a claim.

---

[2] A review of these provisions, which govern the Federal Reserve system, makes clear that membership in that system is reserved for financial institutions and governmental entities. Nowhere do the regulations authorize the Federal Reserve banks to maintain accounts for individuals.

### i. National Bank Act Claim

Plaintiff has also failed to state a claim under the "National Bank Act." Plaintiff has alleged that, "under the National Bank Act . . . financial institutions may be charged double for any damages caused for loss of property." See Record Document 1 at 4. Because it has already been determined that Plaintiff has failed to allege, and could not plausibly allege, that he has any right to the $2.5 million at issue in this case, it is not plausible that Plaintiff has suffered any "loss of property." Additionally, in its research, the Court has found that Plaintiff has failed to state a claim under any other provision of the "National Bank Act." Therefore, Plaintiff's claim for "double damages" under the National Bank Act is **DISMISSED**.

### ii. Defamation Claim

Under Louisiana law, "[f]our elements are necessary to establish a defamation cause of action: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury." Trentecosta v. Beck, 703 So.2d 552, 559 (La.10/21/97). The "publication element" of this cause of action requires "publication or communication of defamatory words to someone other than the person defamed." Perez v. City of New Orleans, 173 F. Supp. 3d 337 (E.D. La. 2016). While Plaintiff does allege that he has been called a "scammer" and has been personally "disrespected by managers and employees" of Barclays Bank, he does not allege that any defamatory statements have been communicated to a third party. See Record Document 1. Therefore, Plaintiff has failed to adequately plead a cause of action for defamation and thus the defamation claim should be **DISMISSED**

### iii. Fraud Claim

Under Louisiana law, the elements of Fraud are "1) a misrepresentation of a material fact, 2) an intent to deceive (fraudulent intent), and 3) justifiable reliance and resulting damages." Tureau v. Hess Corp., 2015 WL 1542508 (W.D. La. 2015) (Opinion by Chief Judge Drell). F.R.C.P. Rule 9 states that, "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Here, there are no allegations that Plaintiff reasonably or justifiably relied on any representation made by Barclays or that any such reliance resulted in damages to Plaintiff. While he does seem to allege that Barclays falsely represented that the Federal Reserve rejected Barclays' transfer request, Plaintiff does not allege that he acted in reliance on this representation to his detriment. Therefore, Plaintiff has failed to adequately plead fraud and thus the fraud claim should be **DISMISSED**.

### iv. Uniform Commercial Code Claims

Plaintiff cites the entire Uniform Commercial Code ("UCC") and specifically UCC Article 4 in his complaint as bases for federal question jurisdiction. UCC Article 4 governs bank deposits and collections. After review, the Court finds that UCC Article 4 does not provide a cause of action or claim relevant to this particular matter. Therefore, Plaintiff has failed to state a claim under UCC 4 and any such claim should be **DISMISSED**.

Article 4A of the UCC governs the rights and obligations of parties to funds transfers. It has been adopted by every state in the United States, except South Carolina. Additionally, Article 4A has been incorporated into Regulation J, which governs the rights and obligations of parties to funds transfers through Fedwire, the funds transfer system established by the Federal Reserve. For our purposes, Regulation J has no relevant

differences from UCC 4A. Based on the facts alleged in Plaintiff's Complaint and the documents attached to that Complaint, the Court finds that UCC 4A is inapplicable to the current case.

UCC 4A governs "funds transfer[s]." A "funds transfer" is defined as "the series of transactions, beginning with the originator's *payment order*, made for the purpose of making payment to the beneficiary of the order." La. Stat. Ann. § 10:4A-104. A "payment order" is defined as "an instruction of a sender to a receiving bank . . . to pay, or to cause another bank to pay . . . money to a beneficiary if: (ii) the receiving bank is to be reimbursed by debiting an account of, or otherwise receiving payment from, the sender . . . ." La. Stat. Ann. § 10:4A-103. In this case, the "receiving bank" is the Federal Reserve and the "sender" is Plaintiff. Under the facts alleged in the Complaint, the Federal Reserve was not to be reimbursed by "debiting an account of, or otherwise receiv[ing] payment from," the Plaintiff. Id. In fact, as discussed above, Plaintiff did not, and cannot, plausibly allege that he maintains an account at the Federal Reserve that could be debited. Additionally, Plaintiff fails to allege that the Federal Reserve would be reimbursed in any way after the transfer took place. Therefore, because the instruction from Plaintiff at issue in this case cannot be considered a "payment order" for purposes of UCC 4A, Plaintiff has failed to state a claim under the Article 4A. Thus, any such claim should be **DISMISSED**.

### v. Other Provisions of Law Mentioned

Title 28 of the United States Code governs the Judiciary and Judicial Procedure. It does not create a cause of action for Plaintiff under the facts of this case. Therefore, any claim under this Title should be **DISMISSED**. Likewise, Title 18 of the United States

Code defines crimes and offenses against the United States. Plaintiff has alleged only claims for civil relief. Title 18 is unavailable to Plaintiff. Therefore, any claim under this Title should be **DISMISSED**. Additionally, Title 42 of the United States Code, Chapter 7 governs the United States social security program. Plaintiff has made no factual allegations related to social security. Therefore, any claim under this chapter should also be **DISMISSED**. Furthermore, Plaintiff mentions the Federal Tax Lien Act but makes no mention of taxes in his factual allegations. Therefore, any claim under this Act should be **DISMISSED**. Finally, the Dodd Frank Act is a series of statutory provisions enacted after the Financial Crisis of 2008 to reform Wall Street practices. After review, the Court finds that Plaintiff has failed to state a claim under any provision of the Dodd Frank Act and any such claim should be **DISMISSED**.

### III.    Defendants' Pending Motion to Strike

Pending before the Court is a Motion to Strike (Record Document 29) filed by Defendants. This motion seeks to have Plaintiff's Reply to Court's Second Notice (Record Document 27) stricken from the record. Plaintiff's Reply to Court's Second Notice, Defendants argue, contains statements that "are scandalous and have no place in this Court." Record Document 29-1 at 4. Given that the Court is granting Defendants' motions to dismiss, Defendants' motion to strike is **DENIED** as moot.

### CONCLUSION

Because the Court lacks personal jurisdiction over all Defendants, except Barclays, and because Plaintiff has failed to state a claim against Barclays, Defendants' Motions to Dismiss Plaintiff's Complaint (Record Documents 10 and 11) are hereby **GRANTED**. A judgment consistent with the terms of the instant Memorandum Ruling will

issue herewith. Additionally, Defendants' Motion to Strike (Record Document 29) is **DENIED** as moot.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this 4th day of January, 2019.

_____
S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT